### Gus Frederickson v. W. T. Westbrook.

89  193<br>s97   41

1. TROVER—*Lies for a Wrongful Conversion of Property.*—A person who, without authority, appropriates property to his own use is liable in trover for a wrongful conversion.

Trover.—Appeal from the Circuit Court of Ford County; the Hon. JOHN H. MOFFETT, Judge, presiding. Heard in this court at the November term, 1899. Reversed and remanded. Opinion filed February 27, 1900.

WYLIE, McBETH & REEVES and TIPTON & TIPTON, attorneys for appellant.

C. E. BEACH and CLOUD & MOFFETT, attorneys for appellee.

MR. JUSTICE HARKER delivered the opinion of the court.

Appellant held a chattel mortgage on three-fifths of a crop of oats raised by Frank E. Johnson on a farm rented of one R. McCracken. After the oats were harvested, and about the last of August, 1898, in pursuance of an arrangement between appellant and Johnson, they were hauled to

the Westbrook elevator in Paxton, Illinois, and delivered to appellee's son. Prior to the 1st of August, 1898, appellee owned and operated the elevator. On that date he turned it over to his son, William H. Westbrook, who was at the time the oats in question were delivered, sole proprietor. Appellee retained the right to receive at and ship from the elevator certain grain purchased by him. The oats measured about 900 bushels, and immediately after they were received by young Westbrook, appellee shipped them to Chicago, where he sold them. He applied the proceeds to a debt of $265 which he claimed Johnson owed him. For the conversion of the oats appellant brought this suit against appellee, joining counts in case and trover. A trial resulted in a verdict and judgment in favor of appellee.

The chief ground on which appellant urges a reversal of the judgment is, that the verdict is contrary to the law and the evidence. His position is well taken unless it be held that the transaction between appellant and young Westbrook amounted to a sale of the oats.

A careful examination of the evidence satisfies us that the chattel mortgage was a valid one; that indebtedness for which it was given to secure, existed at the time the oats were threshed, more than sufficient to cover the value of them; that the arrangement entered into between Johnson and appellant by which the oats were delivered at the elevator, amounted to a delivery of them to appellant, and that appellant, as to all strangers, thereby became their owner.

Did the transaction between appellant and young Westbrook amount to a sale? Certainly not a sale to appellee. There was no privity of contract between him and appellant. W. H. Westbrook was not acting as the agent of his father at the time of receiving the oats. He was then sole proprietor of the elevator, as he was a few days before, when appellant told him that he would have some oats hauled in by Johnson. Nothing was said to indicate that they were to go to appellee, and appellee's name was not mentioned.

Appellant did not intend the transaction as a sale to W.

H. Westbrook, and the latter testified that he did not buy them. Counsel for appellee insist that because appellant, after the oats had been shipped, applied to appellee and also to his son for a settlement, that that is corroboraative of their contention that there was a sale. Had there been any conflict as to what was said when appellant arranged with young Westbrook to receive the oats, the one party affirming and the other denying language importing a sale, there would be some room for such insistence. But there was no such conflict. Appellee and his son both admit that they did not buy the oats of appellant.

Appellant did not, by an express or implied contract, sell the oats to appellee or his son. Appellee, without authority, appropriated them to his own use, and in our opinion is liable in trover for a wrongful conversion.

The judgment will be reversed, therefore, and the cause remanded for another trial. Reversed and remanded.